IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FRANKS, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>AETNA LIFE INSURANCE COMPANY; THE SPRINT/UNITED MANAGEMENT COMPANY LONG TERM DISABILITY PLAN; and SPRINT/UNITED MANAGEMENT COMPANY, in its capacity as Plan Administrator,<br><br>    Defendants. | No. C 10-3880 CW<br><br>ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT (Docket Nos. 59, 69) |

Defendants Aetna Life Insurance Company (Aetna), The Sprint/United Management Company Long Term Disability Plan (the Plan), and Sprint/United Management Company (Sprint) move for summary judgment on Plaintiff Michael Franks's claims for disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA). Plaintiff opposes Defendants' motion and cross-moves for judgment on his claims. Defendants oppose Plaintiff's cross-motion. The Court deemed the matter suitable for decision without oral argument. Having considered the relevant legal authority and the papers submitted by the parties, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's cross-motion for judgment.

BACKGROUND

This is an action for equitable relief and for benefits under a group long-term disability insurance policy and an employee welfare benefit plan covered by ERISA. Plaintiff was employed by

Sprint Nextel as a retail store manager and is a covered employee under the Plan.  Sprint is the Plan Administrator.  For the relevant time period, the Plan provided LTD benefits under a policy underwritten by Aetna, Policy No. GP-877130, entitled "Group Accident and Health Insurance Policy," effective January 1, 2008 through September 28, 2008.  Colquhoun Dec., Ex. 1 and Altura Reply Dec., Ex. 1 (Dawkins Dec. and Ex. 2 thereto).  Defendants have provided the declaration of Aetna's long term disability benefit liaison, Iola Colquhoun, which identifies and authenticates the relevant group accident and health insurance policy.  See Colquhoun Dec. ¶¶ 2-3 and Ex. 1 (policy, also submitted as Dawkins Dec., Ex. 2).  Aetna is the claims fiduciary for benefits provided under the policy, and the Plan grants Aetna discretionary authority to "determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy."  Colquhoun Dec., Ex. 1 at AETF000303.

In May 2005, Plaintiff suffered a major heart attack and underwent a quadruple coronary artery bypass.  Colquhoun Dec., Ex. 2.  He was hospitalized again in 2007, and stopped working for Sprint on August 29, 2008.  Colquhoun Dec. ¶ 4 and Ex. 2. Plaintiff submitted a claim for disability benefits arising from a heart condition, diabetes and complications from those conditions; Aetna denied the claim on June 19, 2009 for lack of sufficient medical documentation.  Colquhoun Dec. ¶ 7 and Ex. 3.  Plaintiff, through his counsel, filed an administrative appeal by letter dated November 6, 2009.  Colquhoun Dec. ¶ 8 and Ex. 4.

2

Plaintiff filed this action on August 30, 2010, seeking payment of LTD benefits under the Plan.[1]  Plaintiff prays for the following relief: (1) benefits due on the Plan; (2) a declaration clarifying his rights under the Plan; (3) equitable relief as the Court deems just and proper; (4) prejudgment interest; (5) statutory penalties under ERISA; (6) attorneys' fees, costs and expenses; and (7) such other relief the Court deems just and proper.

Before filing an answer to the complaint, Aetna notified Plaintiff's counsel, by letter dated October 14, 2010, of its decision to overturn its initial denial of benefits.  Colquhoun Dec. ¶ 13 and Ex. 8.  Aetna determined that Plaintiff became disabled on August 30, 2008, and entitled to the benefits he sought under the "own occupation" definition of disability as of February 26, 2009, following the 180 day elimination period.  Id. ¶¶ 11, 13.  Under the terms of the Plan, the "own occupation" definition of disability applies for the first twenty-four months of benefits, i.e., through February 25, 2011.  Id., Ex. 8.  As of February 26, 2011, Plaintiff would be entitled to continued benefits if he continued to be disabled under the "any reasonable occupation" definition of disability.  Id.

---

[1] On January 19, 2011, Plaintiff voluntarily dismissed his third claim for relief for statutory civil penalties.  (Docket No. 31.)  At the December 22, 2011 hearing on Defendants' earlier motion for summary judgment, the Court dismissed Plaintiff's second claim for relief for breach of fiduciary duty, which alleged that Defendants breached their fiduciary duties by failing to investigate and administer Plaintiff's claim for benefits in a proper and timely manner.

3

On October 21, 2010, Aetna sent Plaintiff two checks totaling $34,616.88, comprising retroactive LTD benefits for the period from February 26, 2009 through August 31, 2010. Berube Dec. ¶ 3. At the case management conference held on December 14, 2010, Plaintiff informed the Court that Aetna failed to pay his disability benefits for the months of September, October and November 2010. Dec. 7, 2010 Joint Case Mgmt. St. ¶ 2. At that time, Aetna represented that Plaintiff's claim was still in the administrative claims handling process. Aetna made further payments to Plaintiff of another $42,415.99 between December 1, 2010, and June 21, 2011. Berube Dec. ¶ 3 and Ex. 1.

On April 5, 2011, the Court entered a sixty day order of conditional dismissal. On June 3, 2011, Plaintiff timely certified that the settlement was not consummated and the case was placed back on calendar. Based on Social Security Administration information, Aetna determined that Plaintiff received California state disability benefits (SDI) from February 26, 2009 to January 22, 2010; social security disability benefits (SSDI) at reduced amounts from February 1, 2009 to June 30, 2009 and at full amounts effective January 1, 2010; and social security retirement benefits (SSR) from July 1, 2009 to December 31, 2009. Berube Dec. ¶¶ 5-8. Aetna treated these benefits as other income and as offsets to Plaintiff's LTD benefits under the policy, and calculated an overpayment of $38,676.00 in benefits for the period February 26, 2009 through June 30, 2011. Berube Dec. ¶ 9.

On July 7, 2011, Aetna informed Plaintiff of the overpayment and requested reimbursement of $38,676.00 pursuant to the offset and overpayment provisions of the policy. Berube Dec. ¶ 10 and

4

1  Ex. 5. Plaintiff did not repay, and Aetna applied Plaintiff's
2  monthly LTD benefits to the overpayment from July 2011 through
3  December 2012. Id. ¶ 11 and Ex. 6. Under this repayment plan,
4  Aetna will recover the overpayment by January 2013, at which time
5  Plaintiff's LTD benefit will be $2,190.60 per month, through June
6  2013. Id.

7  Defendants thereafter filed a motion for summary judgment, on
8  which the Court held a hearing. By order entered December 23,
9  2011, the Court denied Defendants' motion without prejudice,
10 ordered Plaintiff to provide documentation of social security
11 benefits originally awarded to him and instructed the parties to
12 meet and confer about the correct benefit payment for each month
13 at issue. On April 23, 2012, the parties having failed to resolve
14 the dispute over the offset, Defendants filed their second motion
15 for summary judgment pursuant to Federal Rule of Civil Procedure
16 56. On May 25, 2012, Plaintiff filed a cross-motion for judgment
17 pursuant to Rule 52.

18 The remaining issue in this action is whether Aetna is
19 entitled to recover an overpayment of LTD benefits based on social
20 security benefits that Plaintiff received. Plaintiff disputes
21 that Defendants have produced complete copies of the operative
22 group disability policy and demonstrated that the offset
23 provisions are set forth in the policy, rather than in ancillary
24 plan documents. Because the parties seek a legal determination
25 whether the policy contains offset provisions covering Plaintiff's

5

social security benefits, the Court decides the parties' cross-motions under Rule 56.[2]

LEGAL STANDARD

Pursuant to Rule 56, summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences

---

[2] Typically, in ERISA cases involving claims under group disability plans, parties dispute the plaintiff's eligibility for benefits and move for judgment pursuant to Rule 52. See Pannebecker v. Liberty Life Assur. Co. of Boston, 542 F.3d 1213, 1217 n.1 (9th Cir. 2008) (Rule 52 motion appropriate in ERISA case disputing disability because of the existence of a genuine issue of material fact). On a Rule 52 motion, as opposed to a Rule 56 motion for summary judgment, the court does not determine whether there is an issue of material fact, but whether the plaintiff is disabled under the policy. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). The court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true. Id. at 1094-95. Here, the parties do not dispute whether Plaintiff is disabled, nor amounts due or amounts of social security income received, but whether Defendants are entitled under the policy to offset Plaintiff's social security benefits. This dispute presents a question of law based on undisputed facts that can be decided on a motion for summary judgment.

in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

## DISCUSSION

Pursuant to § 502(a)(1)(B) of ERISA, Plaintiff seeks disability benefits under the Plan. This statute allows a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The parties dispute whether Defendants are entitled to offset Plaintiff's social security benefits to reduce his disability payments. Plaintiff does not dispute the amount of social security benefits that Aetna calculated. Rather, Plaintiff contends that Defendants have failed to produce the policy underlying the Plan and failed to demonstrate that the policy contains the offset provisions. Plaintiff cites CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1878 (2011) ("the summary documents, important as they are, provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)."). There, the Supreme Court held that where the terms of the summaries were separate from the plan, the terms of the plan control and a court is not authorized to alter those terms. 131 S. Ct. at 1877. Plaintiff contends that the disputed offset provisions are not included in the group disability policy itself, but only in ancillary documents. Pl.'s Opp. at 6.

7

Plaintiff argues that the certificate of insurance containing the offset provisions is ancillary to the policy and therefore not enforceable. Pl.'s Opp. at 6. See Colquhoun Dec., Ex. 1 at AETF000187-202 ("If you become covered, this Booklet will become your Certificate of Coverage.").

Defendants have sufficiently demonstrated that the policy expressly incorporates the certificate of insurance which contains the offset provisions. As stated on the "Policy Contents" page, the policy "consists of" provisions found in the listed certificates, including the "Cert. Base: 1" governing the group LTD coverage. Colquhoun Dec., Ex. 1 at AETF000289 ("A 'Certificate' consists of a Certificate Base document ('Cert. Base') and any Summary of Coverage ('SOC') or Certificate Rider ('Rider') which may be issued to support or amend the Cert. Base."). The introductory page of the certificate of insurance, entitled "Your Group Coverage Plan," states, "The benefits and main points of the group contract for persons covered under this Plan are set forth in this Booklet." Id. at AETF000187. The certificate of insurance provides, "The monthly benefit is an amount based on your monthly predisability earnings. Other income benefits, as defined later, are taken into account." Id. at AETF000188. The certificate of insurance explicitly defines "Other Income Benefits" to include "[d]isability, retirement, or unemployment benefits required or provided for under any law of government," such as "[b]enefits under the Federal Social Security Act." Id. at AETF000191. The certificate of insurance also provides that in the case of overpayment, the employee "will have to repay Aetna if any overpayment results." Id. at AETF000193.

8

1  The certificate of insurance further provides that Aetna may
2  recover benefit payments "in amounts greater than the benefits
3  that [the beneficiary] is entitled to receive." Id. at
4  AETF000198.  The overpayment provision explicitly names "Federal
5  Social Security benefits" as an example of "other income"
6  resulting in overpayment.  Id.
7      The group LTD policy also consists of Summary of Coverage 1A
8  applying to the "Core Plan" and 1B applying to the "Buy-Up Plans."
9  Id. at AETF000289 (Policy Contents).  See also id. at AETF000207
10 (SOC: 1A) and AETF000217 (SOC: 1B).  Both Summary of Coverage 1A
11 and 1B communicate similar information about the offset provisions
12 in a section entitled "Benefits Actually Payable": "Any monthly
13 benefit actually payable will be reduced by 'other income
14 benefits.'"  Id. at AETF000209 and AETF000219.  These documents
15 conclusively demonstrate that the policy contains offset
16 provisions for other income such as social security benefits.
17     Plaintiff also contends that the documents presented by
18 Defendants do not demonstrate which group policy was in effect in
19 August 2008 because the Plan changed its group insurance policy
20 provider from Hartford Life and Accident Insurance Company to
21 Aetna sometime in 2008.  Opp. at 7-8.  Plaintiff unnecessarily
22 obfuscates the pertinent question whether the offset provisions
23 apply to his social security benefits by suggesting that none of
24 those provisions should be enforced because of the purported
25 confusion over which insurance company was underwriting the Plan
26 at the relevant time.  Plaintiff suggests that the offset
27 provisions should be invalidated on the grounds that the policy
28 documents are not numbered in chronological order, the ERISA Plan

9

does not have a formal name, the record is unclear when Aetna took over the claims administration from Hartford, and the policy is missing components or has conflicting documentation, making it "impossible to discern what terms and versions of the various documents were operative at any particular time." Pl.'s Opp. at 7-8. While the policy documents are not a model of clarity, Plaintiff's arguments do not create a genuine dispute about the terms of Aetna's policy, particularly the offset provisions. Defendants have presented sufficient evidence that Aetna administered Plaintiff's claim under the "Group Accident and Health Insurance Policy," Policy No. GP-877130, effective January 1, 2008 to September 28, 2008, which was the policy in effect on Plaintiff's first date of disability, i.e., August 30, 2008. Colquhoun Dec. ¶¶ 2, 5 and Ex. 1. Aetna's LTD Benefit Liaison, Iola Colquhoun, authenticates the contents of the applicable policy, as listed on the Policy Contents page. Id. ¶ 3 and Ex. 1 at AETF000289 (identifying the policy to include the certificate base document "Cert. Base: 1" for LTD coverage, issued September 10, 2008) and AETF000187-206 (the certificate of group LTD insurance coverage).

To clarify the record as to when Aetna began underwriting the Plan, Aetna's account executive for the Sprint account, Emily Dawkins, explains that Aetna and Sprint agreed that Aetna would administer claims made under the Plan beginning January 1, 2008. Aetna first issued the group accident and health insurance policy on February 14, 2008, effective January 1, 2008. Dawkins Dec. ¶¶ 3-5 and Ex. 1. Sprint proposed modifications to the policy in May 2008, and Aetna issued the operative policy in September 2008,

10

made effective as of January 1, 2008. Id. ¶¶ 7-8 and Ex. 2. The relevant policy terms are contained in a document entitled "Your Group Plan - Sprint/United Management Company."[3] Defendants represent that none of the modifications that Sprint proposed, or that Aetna made, affected the offset provisions in the Aetna policy, and Plaintiff does not contend otherwise. Id. ¶ 9.

Plaintiff also argues that Defendants failed to show that any modifications to the policy by Aetna were approved by the Plan sponsor, Pl.'s Opp. at 6 (citing Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1161-62 (9th Cir. 2001)). In Grosz-Salomon, the Ninth Circuit determined that the applicable benefit plan had not been amended in conformance with the policy provisions, and held that the discretionary language added to the summary plan description (SPD) was "null and void." 237 F.3d at 1162. Here, by contrast, Defendants have presented sufficient evidence that Sprint requested the changes that Aetna made to the policy in September 2008. Dawkins Dec. ¶¶ 7-8 and Ex. 2. Even if Aetna's modifications to the policy issued in September 2008 were deemed void for lack of Sprint's written approval, Plaintiff does not demonstrate that any material issue of fact would result from invalidating those modifications because the original Aetna policy issued in February 2008 also included the same offset provisions

---

[3] It appears that Plaintiff's concern about the policy's September 2008 issuance date was a matter discussed by counsel during efforts to meet and confer, and that Plaintiff's counsel did not insist on production of Sprint's application, but focused instead on his demand for a complete copy of the governing policy. Baum Decl. ISO Pl.'s Opp., Ex. A. Any dispute over the policy's issuance date does not present a genuine issue of material fact.

1 reducing LTD monthly benefits by other income benefits.  Dawkins
2 Dec. ¶¶ Ex. 1 at AETF000673, 692, 712, 722.

3     Plaintiff further argues that the September 2008 Aetna policy
4 is not the relevant policy because the governing policy "is the
5 one that was validly in effect on the date that defendants denied
6 plaintiff's claim."  Pl.'s Opp. at 5 (citing Grosz-Salomon, 237
7 F.3d at 1160).  But here, Aetna determined that Plaintiff is
8 eligible for benefits under the policy that was in effect on his
9 first date of disability, and there is no denial at issue.  Even
10 if a later policy were applicable, Plaintiff has not argued, much
11 less demonstrated, that a different policy has offset or
12 overpayment terms that are materially different from the terms set
13 forth in the September 2008 policy.

14     Finally, Plaintiff contends that the Summary of Coverage does
15 not define other income to include social security benefits.
16 Pl.'s Opp. at 9-10 (citing Colquhoun Dec., Ex. 1 at AETF000209).
17 This Summary of Coverage states, "Any monthly benefit actually
18 payable will be reduced by 'other income benefits,'" but does not
19 purport to define "other income benefits," as that term is used
20 elsewhere in the policy.  Plaintiff does not identify any language
21 about the offset provisions in the summary document that conflicts
22 with the policy.  As Plaintiff recognizes, such "'summary
23 documents . . . provide communication with beneficiaries about the
24 plan, but . . . do not themselves constitute the terms of the
25 plan.'"  Pl.'s Opp. at 6 (quoting Amara, 131 S. Ct. at 1878).

26     Plaintiff has failed to raise a genuine dispute as to any
27 material fact about the governing group disability policy or the
28 offset and overpayment provisions contained in the policy or in

12

the Plan.  The Court determines as a matter of law that the offset and overpayment provisions entitle Defendants to offset the amount of social security benefits received by Plaintiff and require Plaintiff to return the overpayment of LTD benefits that he received in the amount of $38,676.00.  Therefore, Plaintiff is not entitled to the offset and overpayment recovery that Aetna has deducted from Plaintiff's monthly LTD benefits starting July 2011.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Renewed Motion for Summary Judgment (Docket No. 59) and DENIES Plaintiff's Motion for Judgment (Docket No. 69).  Judgment will be entered accordingly.  All parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 10/30/2012

CLAUDIA WILKEN
United States District Judge